**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JOSE EDUARDO VARGAS-SACUL,

Petitioner,

v.

J. JOHNSON, *et al.*,

Respondents.

Case No. 5:26-cv-02494-ACCV

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

## I. RULING

On May 11, 2026, Petitioner Jose Eduardo Vargas-Sacul ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241, challenging his detention as a violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. (Dkt. 1 at 13–14.) For the reasons stated herein, the Court grants the Petition.

## II. FACTUAL AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Guatemala who entered the United States on June 12, 2019, through the Texas border in Paso Del Norte. (Dkt. 10 at 1.) At the time, Petitioner was 14 years old and an unaccompanied minor. (Dkt. 15 at 2.)

Petitioner claims he did not know how to start immigration proceedings and as a result, never applied for Asylum upon entering the United States. (Dkt. 1 at 2.) Petitioner claims to have not missed any ICE check-ins since entering the United

States. (*Id.*) Respondents contend that Petitioner was not subject to check-ins. (Dkt. 15 at 2.)

Petitioner lived with his wife and son in Baltimore, Maryland, until being taken into ICE custody on April 1, 2026. (Dkt. 10 at 1.) Petitioner worked as a heavy equipment operator and was an active member of his local community church in Maryland. (Dkt. 3 at 2–4.)

On July 30, 2023, Petitioner was arrested and charged with misdemeanor Driving Under the Influence. (Dkt. 10 at 1.) On February 1, 2024, Petitioner was arrested and charged with misdemeanor Failure to Appear. (*Id.* at 2.) Petitioner claims he did not appear because he never received proper service as the address on his ID is not his current address. (Dkt. 18 at 5.) On March 1, 2026, Petitioner was arrested and charged with Second Degree Assault, Failure to Appear, Destruction of Property, and Intoxication. (Dkt. 10 at 2.)

On April 1, 2026, ICE arrested Petitioner when he was released from the Baltimore Central Booking and Intake Center. (Dkt. 10 at 2.) ICE then transported Petitioner to the Adelanto ICE Processing Center in Adelanto, California. (*Id.*) No bond hearing has been held.

In the Petition, Petitioner alleges his continued detention violates: (1) the Fifth Amendment (Procedural Due Process—Detention); and (2) the Fifth Amendment (Substantive Due Process—Detention). (Dkt. 1 at 12 –13.) Among the relief requested, Petitioner requests immediate release and an order prohibiting his rearrest without a pre-deprivation hearing before a neutral decisionmaker. (*Id.* at 4.) Petitioner also requests that the Court order Respondents not to transfer Petitioner outside of the Central District of California or deport him during the pendency of this matter. (*Id.*) In the alternative, Petitioner requests a bond hearing. (*Id.*)

## III. LEGAL STANDARD

Federal district courts possess the authority to grant petitions for writs of habeas corpus by a person who claims to be held "in custody in violation of the Constitution or

laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "The petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025) (noting that immigration detainee bears burden of proving by a preponderance of the evidence that he is entitled to habeas relief).

## IV. DISCUSSION

In this habeas action, Petitioner claims that his detention is unlawful because it violates the Fifth Amendment's procedural and substantive due process protections. (Dkt. 1 at 12–13.) For the reasons below, the Court disagrees but does find a bond hearing is warranted.

### A. Habeas Jurisdiction

As a threshold matter, the Court has jurisdiction over this action because Petitioner is not challenging his removal proceedings, he is challenging his prolonged detention by Respondents. (*See generally* Dkts. 1;18.)

Authority delegated to the Attorney General, such as those related to immigration proceedings, is still subject to the requirements of due process. The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law[.]" U.S. Const. amend. V. Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001).

### B. Petitioner's Due Process Claims

Petitioner argues his ongoing detention violates his procedural and substantive due process rights under the Fifth Amendment. (Dkt. 1 at 12–13.) Respondents assert that Petitioner is lawfully detained as his removal proceedings are ongoing, and at most Petitioner is entitled to a bond hearing. (Dkt. 10 at 2.)

///

A writ of habeas corpus may be granted to any petitioner who demonstrates "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474, 124 S. Ct. 2686, 2692, 159 L. Ed. 2d 548 (2004). A petitioner bears the burden of proving by the preponderance of the evidence that they are entitled to habeas relief. *Davis*, 384 F.3d at 638. Though the liberty interests of U.S. citizens compared to noncitizens "are not coextensive," the Fifth Amendment nonetheless "entitles [noncitizens] to due process of law in deportation proceedings." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205–06 (9th Cir. 2022) (quoting *Hussain v. Rosen*, 985 F.3d 634, 642 (9th Cir. 2021)).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The *Mathews* test balances three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Matthews v. Eldridge*, 424 U.S. at 335; *see also Zinermon*

*v. Burch*, 494 U.S. 113, 127, 110 S. Ct. 975, 984, 108 L. Ed. 2d 100 (1990).

The first *Matthews* factor—the private interest—weighs against Petitioner's right to habeas relief. Petitioner argues Petitioner has a liberty interest in avoiding re-detention after Petitioner's initial release and is entitled to a pre-deprivation hearing. (Dkt. 1 at 12.) However, Petitioner neither has a final removal order nor was subject to a prior supervision order that would have required pre-deprivation notice. *See Demore v. Kim*, 538 U.S. 510, 527, 123 S. Ct. 1708, 1719, 155 L. Ed. 2d 724 (2003). Additionally, while living in the United States, Petitioner has accumulated a criminal record that includes DUI, second degree assault, failure to appear at a court hearing, and destruction of property. (Dkt. 10 at 1–2.)

The second *Matthews* factor—the risk of an erroneous deprivation—also weighs against Petitioner's right to habeas relief. Petitioner argues because Petitioner received no procedural protections the risk of erroneous deprivation is high. (Dkt. 1 at 12.) However, Petitioner has been placed in removal proceedings and has had multiple hearings in Immigration Court. (Dkt. 10 at 2; Dkt. 15 at 2.) Additionally, Petitioner failed to apply for Asylum upon entering the United States. (Dkt. 1 at 2.) While Petitioner claims this was due to a lack of knowledge of how to start an Asylum application, Petitioner has lived in the United States of seven years and could have consulted with a non-profit or attorney during that time. Thus, there is a low risk of erroneous deprivation of Petitioner's rights.

The third and last *Matthews* factor—the Government's interest— also weighs against Petitioner's right to habeas relief. Considering Petitioner's criminal history, the government has a legitimate interest in ensuring Petitioner is present for removal proceedings. Consequently, Petitioner has been provided the requisite procedures to challenge Petitioner's detention.

Petitioner further argues that Petitioner's detention violates Petitioner's substantive due process rights because Petitioner is not a flight risk or a danger to the community. (Dkt. 1 at 13.) Petitioner's argument is unpersuasive.

At a “bare minimum,” noncitizens subject to civil immigration detention—just like people detained civilly and individuals accused but not convicted of a crime—“cannot be subjected to conditions that ‘amount to punishment.’ ” *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *see also Wong Wing v. United States*, 163 U.S. 228, 235 (1896) (concluding that “detention or temporary confinement” is “valid” to carry out “the provisions for the exclusion or expulsion of [noncitizens],” but that detention involving “imprisonment at hard labor” is unconstitutional without a criminal trial).

Civil detention may be deemed punitive “where it is excessive in relation to its non-punitive purpose or is employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.” *Jones*, 393 F.3d at 934. This may be so where civil detention is excessively prolonged, even if not indefinite. *United States v. Torres*, 995 F.3d 695, 708-10 (9th Cir. 2021) (concluding that a pretrial criminal detainee's 21-month detention was “approaching the limits of what due process can tolerate” and that “at some point, regardless of the risks associated with Torres's release, due process will require that he be released if not tried”). Civil detention can also violate due process when detainees are subject to conditions so harsh as to give rise to an inference that the detention is punitive. *See Jones*, 393 F.3d at 932. *See also Doe v. Becerra*, 723 F. Supp. 3d 688, 691 (N.D. Cal. 2024) (considering the above factors from *Torres* and *Jones* in evaluating substantive due process claim raised by an individual in immigration detention).

Here, Petitioner has been detained for five months. While any period of custody is difficult, such a period is not unusually prolonged for civil detention purposes. *Cf. Torres*, 995 F.3d at 709-10 (21 months of pretrial detention for person charged with criminal offense was “approaching the limits of what due process can tolerate”); *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1083 (N.D. Cal. 2024) (finding 30 months of immigration detention to weigh in favor of finding a substantive due process violation). Nor has Petitioner pointed to conditions worse than those in criminal custody, such as

would give rise to an inference that the detention is punitive. *Doe*, 732 F. Supp. 3d at 1089 ("Determining whether the conditions at [an immigration detention facility] are worse 'as a whole' than at the state facilities where Mr. Doe was imprisoned is a difficult comparison that would require comprehensive evidence.").

Even so, Petitioner argues that his detention is out of line with the government's interests in detention as Petitioner purport it bears no reasonable relation to a legitimate governmental purpose and instead is for the purpose of meeting Department of Homeland Security "quotas" as part of a mass deportation campaign. (Dkt. 1 at 13.) The Court cannot make that finding on this record. A bond hearing is the primary test of whether detention is excessive to the government's interest in detention. *See Martinez Leiva v. Becerra*, No. 23-cv- 02027-CRB, 2023 WL 3688097, at *5 (N.D. Cal. May 26, 2023). There is no record that Petitioner ever had or that he requested a custody redetermination by the Immigration Judge. The Court is not inclined to grant a constitutional claim where the statutory route has not yet proved inadequate.

**C. Appropriate Relief**

Respondents oppose Petitioner's release and argue he is being lawfully detained and has procedural avenues available to challenge his detention. (Dkt. 15 at 3.) In such circumstances, a bond hearing—where the Government bears the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community—is the appropriate relief. *See Kou v. Warden of the Adelanto Ice Processing Ctr.*, No. 5:26-CV-02923-AJR, 2026 WL 1722906, at *4 (C.D. Cal. June 11, 2026) (finding that petitioner's re-detention was triggered by an arrest, and the proper remedy for a due process violation was a prompt bond hearing where the government bears burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community); *Guerrero Alfaro v. Warden Golden State Annex Det. Facility*, No. 1:26-CV-02983-JLT-EPG-HC, 2026 WL 1224249, at *4 (E.D. Cal. May 5, 2026), *report and recommendation adopted sub nom. Alfaro v. Warden Golden State Annex Det. Facility*, No. 1:26-CV-02983 JLT EPG (HC), 2026 WL

1272626 (E.D. Cal. May 8, 2026) (ordering bond hearing for petitioner who was "detained after he was arrested for aggravated assault – strangulation of a domestic violence victim"). Here, Petitioner was detained due to their arrest for DUI. (Dkt. 10 at 1.) Accordingly, the Court finds that a post-deprivation hearing is the appropriate remedy.

## V. CONCLUSION

For the reasons stated, the Court grants the Petition and orders Respondents to provide Petitioner Jose Eduardo Vargas-Sacul (A# 203-829-604) an individualized bond hearing before an immigration judge within seven days, where the Government bears the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. Respondents must file a notice of compliance within seven days of the bond hearing.

DATED: September 15, 2026

HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge